IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

SHERRIE ANN C.,

                    Plaintiff,

          v.                                    Civil Action No.
                                                5:19-CV-1445 (DEP)

COMMISSIONER OF SOCIAL SECURITY,


                    Defendant.

_____

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF

OLINSKY LAW GROUP                     ANDREW FLEMMING, ESQ.
Attorneys at Law
250 South Clinton St., Suite 210
Syracuse, New York 13202

FOR DEFENDANT

HON. ANTOINETTE BACON                 NICOLE SONIA, ESQ.
Acting United States Attorney         Special Assistant U.S. Attorney
for the Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

ORDER

        Currently pending before the court in this action, in which plaintiff

seeks judicial review of an adverse administrative determination by the Commissioner, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are cross-motions for judgment on the pleadings.[1]  Oral argument was conducted in connection with those motions on February 4, 2021, during a telephone conference held on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination did not result from the application of proper legal principles and is not supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, a transcript of which is attached and incorporated herein by reference, it is hereby

ORDERED, as follows:

1)    Plaintiff's motion for judgment on the pleadings is GRANTED.

2)    The Commissioner's determination that plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the

---

[1]    This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

Social Security Act, is VACATED.

3)     The matter is hereby REMANDED to the Commissioner, without a directed finding of disability, for further proceedings consistent with this determination.

4)     The clerk is respectfully directed to enter judgment, based upon this determination, remanding the matter to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) and closing this case.

David E. Peebles
U.S. Magistrate Judge

Dated:      February 9, 2021
            Syracuse, NY

UNITED STATES  DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------x
SHERRIE ANN C.,

                        Plaintiff,

vs.                              5:19-CV-1445

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
-------------------------------------------x

        Transcript of a **Decision** held during a

Telephone Conference on February 4, 2021, the

HONORABLE DAVID E. PEEBLES, United States Magistrate

Judge, Presiding.

                A P P E A R A N C E S

                   (By Telephone)

For Plaintiff:      OLINSKY LAW GROUP
                    Attorneys at Law
                    250 South Clinton St., Suite 210
                    Syracuse, New York  13202
                      BY:  ANDREW AUSTIN FLEMMING, ESQ.


For Defendant:      SOCIAL SECURITY ADMINISTRATION
                    Office of General Counsel
                    J.F.K. Federal Building
                    Room 625
                    Boston, Massachusetts  02203
                      BY:  NICOLE SONIA, ESQ.


                *Jodi L. Hibbard, RPR, CSR, CRR*
              *Official United States Court Reporter*
                    *100 South Clinton Street*
                  *Syracuse, New York  13261-7367*
                        *(315) 234-8547*

1          (The Court and all counsel present by

2          telephone.)

3          THE COURT:  Okay.  Thank you.  Let me begin by

4    expressing my appreciation for excellent presentations, both

5    written and verbal, I enjoyed working with you on this case.

6          I have before me a challenge to a determination by

7    the Commissioner finding that plaintiff was not disabled

8    within the relevant times and therefore ineligible for the

9    benefits which she's sought.  The background -- and the

10   challenge is brought pursuant to 42 United States Code

11   Sections 405(g) and 1383(c)(3).

12         The background is as follows:  Plaintiff was born

13   in September of 1970 and is currently 50 years old.  She was

14   41 at the alleged onset of disability on April 28, 2012.

15   Plaintiff lives in a trailer in Richland, New York with her

16   son who by my calculations is now 19 years of age.  She

17   stands 5 foot 4 inches in height and weighs -- has weighed at

18   various times between 140 and 155 pounds.  Plaintiff has two

19   children, they were 13 and 15 years old in August of 2012.

20   She also, according to the records, was in an abusive

21   relationship of approximately seven years with the father of

22   her children.  Plaintiff stopped attending high school in

23   10th grade and was in regular classes while she did attend.

24   She did subsequently achieve a GED and went to college for

25   approximately two years.  Plaintiff has a driver's license

1    and owns a car.  There is reference, including at page 713 of

2    the administrative transcript, that she doesn't like driving

3    due to panic attacks.

4         Plaintiff stopped working in April of 2010.  Her

5    past relevant work includes as a baby-sitter, census taker,

6    school janitor, retail cashier, and a laborer.  She worked

7    for a significant period of time as a laborer in the floor

8    business.  She left that position when her boss retired, the

9    owner of the business.

10        Physically, plaintiff suffers from arthritis,

11   fibromyalgia, a history of reported seizures, a right

12   shoulder injury which was exacerbated in May or early June of

13   2018 when she lifted a gate, that appears at page 248 of the

14   administrative transcript.  She also experiences degenerative

15   disk disease of the lumbar spine, a history of Lyme disease,

16   and hiccups extending over a period of time.  Plaintiff

17   underwent surgery in 2007 to repair a right leg fracture.

18   She has for her shoulder and neck injury underwent, has

19   undergone physical therapy, injections but no surgery.  The

20   plaintiff's right shoulder was x-rayed on June 8, 2018 and

21   report is at page 730 of the administrative transcript.  The

22   finding was there minimal arthritis in the glenohumeral

23   joint, moderate AC joint arthritis but no fractures or

24   dislocations.  Magnetic resonance imaging or MRI testing on

25   June 11, 2018 was conducted.  The findings were as follows:

1    "Multiple complex findings of the right shoulder include a

2    9-millimeter full-thickness or nearly full-thickness

3    articular-sided anterior leading edge supraspinatus tendon

4    tear overlying a relatively large anterior enthesopathic

5    cortical erosion.  The more posterior and medial rotator cuff

6    exhibits tendonosis with tendon enlargement, interstitial

7    mucoid degeneration, and undersurface fraying.  There was a

8    finding of intact rotator cuff and deltoid musculature, no

9    bony overgrowth of the AC joint.  There is a type I distal

10   acromion morphology.  No evidence of an AC joint or

11   coracoclavicular separation but an edematous AC joint with an

12   effusion and capsulitis could be associated with a

13   symptomatic arthropathy.  Suspected low-grade SLAP lesion.

14   The long biceps tendon is torn and likely retracted.

15   Low-grade subscapularis delaminating thinning without a

16   full-thickness tear.  Correlation for any biceps tendon

17   dysfunction, pain at the biceps groove, or deformity at the

18   upper arm is suggested."  I should have practiced that before

19   I read it.

20          Mentally, plaintiff has experienced depression,

21   anxiety, panic disorder with agoraphobia, insomnia, and

22   hallucinations.  She receives health care treatment at

23   Pulaski Health Care.  Her primary is Nurse Practitioner

24   Rachel Isabelle.  She also has seen neurologist Ijaz Rashid.

25   She sees orthopedists including Dr. Andrew Markwith and

1    Dr. Peter Vaneenenaam.  And she sees Dr. Teresa Piotrowicz

2    and LMSW Jennifer Koon approximately one time per month for

3    her mental treatment.

4              Medications prescribed to the plaintiff include

5    citalopram, Cymbalta, metazine, quistane, Xanax, Duloxetine,

6    hydroxyzine, Risperdal, Naproxen, Mobic, Effexor, meloxicam,

7    and gabapentin.

8              Plaintiff's activities of daily living include the

9    ability to dress, bathe, groom, shop, do laundry, cook,

10   clean, she sees friends, she cares for four dogs, she cares

11   for or has cared for horses.  There was an indication she may

12   be giving the horse up.  She gardens.  Plaintiff smokes one

13   pack of cigarettes per day and marijuana three times per

14   week.

15             Procedurally, plaintiff applied for Title II

16   benefits on July 11, 2016, and Title XVI benefits on July 21,

17   2016.  There is indication that there were prior unsuccessful

18   applications for Social Security benefits.  In her

19   applications in July 2016, she alleged an onset date of

20   April 28, 2012 and claimed disability due to anxiety,

21   depression, lesion on brain, growth on thyroid, hiccups for

22   two years, water on knees, Lyme disease, and fibromyalgia.

23             A hearing was conducted on October 24, 2018 by

24   Administrative Law Judge Kenneth Theurer.  Administrative Law

25   Judge Theurer issued an unfavorable decision on November 5,

1    2018.  The Social Security Administration Appeals Council

2    denied the request for review on September 24, 2019.  This

3    action was commenced on November 21, 2019 and is timely.

4         In his decision, ALJ Theurer applied the familiar

5    five-step test for determining disability.  He first noted

6    that plaintiff's insured status ended on September 30, 2014.

7         At step one, he concluded plaintiff had not engaged

8    in substantial gainful activity since April 28, 2012.

9         At step two, he found that plaintiff does suffer

10   from severe impairments that impose more than minimal

11   limitation on her ability to perform basic work functions,

12   including degenerative disease of the lumbar spine,

13   osteoarthritis, fibromyalgia, a history of seizures,

14   depression, and anxiety.

15        At step three, ALJ Theurer concluded that none of

16   plaintiff's conditions, either singly or in combination, meet

17   or medically equal any of the listed presumptively disabling

18   conditions set forth in the Commissioner's regulations.

19   Fibromyalgia was considered under Listing 14.09D and Social

20   Security Ruling 12-2p.  The mental components were examined

21   under 12.04 and 12.06 and a finding was made that neither the

22   B nor the C criteria of those listings are met.  Plaintiff's

23   lumbar spine condition was examined under Listing 1.04, and

24   the history of seizures under Listing 11.02.

25        The administrative law judge next concluded that

1    plaintiff retains the ability to perform light work with

2    physical and mental-related limitations.  Physically, the

3    limitation is she can occasionally lift and carry 20 pounds,

4    frequently lift and carry 10 pounds, sit for up to six hours,

5    stand or walk for approximately six hours in an eight-hour

6    day with normal breaks, occasionally climb ramps or stairs,

7    never climb ladders, ropes, or scaffolds, and can perform

8    occasional balancing, stooping, kneeling, crouching, and

9    crawling.  She should avoid working in unprotected heights or

10   in conjunction with dangerous machinery.

11            The mental-related limitations are as follows:  She

12   retains the ability to understand and follow simple

13   instructions and directions, perform simple tasks with

14   supervision and independently, maintain attention and

15   concentration for simple tasks, regularly attend to a routine

16   and maintain a schedule.  She relates to and interacts with

17   coworkers and supervisors to the extent necessary to carry

18   out simple tasks, i.e., she can ask for help when needed,

19   handle conflicts with others, state her own point of view,

20   initiate or sustain a conversation and understand and respond

21   to physical, verbal, and emotional social cues.  But she

22   should avoid work requiring more complex interaction or joint

23   efforts with coworkers to achieve goals.  She should have no

24   more than occasional contact with coworkers, supervisors, and

25   the public.  Claimant can handle reasonable levels of simple

1    work-related stress in that she can make occasional simple

2    decisions directly related to the completion of tasks in a

3    stable, unchanging work environment.

4            Applying that residual functional capacity or RFC

5    finding at step four, Administrative Law Judge Theurer

6    concluded that plaintiff is incapable of performing her past

7    relevant work as a sander/finisher which was performed at the

8    heavy level and a child monitor at the medium level.

9            At step five, Administrative Law Judge Theurer

10   initially noted that if plaintiff could perform a full range

11   of light work, the finding of not disabled would be directed

12   by the Medical-Vocational Guidelines set forth in the

13   Commissioner's regulations and specifically Grid Rule 202.21.

14   Noting additional exertional and nonexertional limitations

15   that would erode the job base on which the Grids were

16   predicated, he found based on the testimony of a vocational

17   expert that notwithstanding her conditions and limitations,

18   plaintiff is capable of performing jobs available in the

19   national economy, including as a routing clerk, a cleaner,

20   housekeeping, and an order caller and found that she was

21   therefore not disabled at the relevant times.

22           The court's review in this matter of course is

23   deferential.  It is the task of the court to determine

24   whether correct legal principles were applied and the

25   determination is supported by substantial evidence defined as

1    such relevant evidence as a reasonable mind would find

2    sufficient to support a conclusion.  The Second Circuit has

3    noted, including in *Brault v. Social Security Administration*

4    *Commissioner*, 683 F.3d 443 from the Second Circuit, June 29,

5    2012, that this is a very deferential standard even more

6    stringent than the clearly erroneous standard that we are all

7    familiar with.  As the court went on to note in *Brault*, the

8    substantial evidence standard means once an ALJ finds facts,

9    we can reject those facts only if a reasonable fact finder

10   would have to conclude otherwise.

11          Plaintiff in this case raises two basic

12   contentions.  One related to the step two finding which

13   failed to acknowledge plaintiff's shoulder and neck injury as

14   severe which would result, according to the plaintiff, in a

15   limitation on her ability to reach; and secondly, she

16   challenges the weighing of opinion evidence regarding

17   plaintiff's mental health, including opinions from

18   Dr. Piotrowicz, a treating source, and Dr. Grassl, an

19   examining -- consultative examiner.

20          The -- I'll take the step two argument first.  Of

21   course, the governing regulations provide that an impairment

22   or combination of impairments is not severe if it does not

23   significantly limit plaintiff's physical or mental ability to

24   do basic work activities.  20 C.F.R. Section 404.1521(a).

25   That section goes on to describe what is meant by the phrase

1   basic work activities defining that term to include "the

2   abilities and aptitudes necessary to do most jobs."

3           The step two requirement is *de minimus* and intended

4   only to screen out the truly weakest of cases.  *Dixon v.*

5   *Shalala*, 54 F.3d 1019 at 1030, Second Circuit 1995.  It is

6   noted, however, that the mere presence of a disease or

7   impairment or establishing that a person has been diagnosed

8   or treated for a disease or an impairment is not by itself

9   sufficient to establish a condition as severe.  *Coleman v.*

10  *Shalala*, 895 F.Supp. 50 at 53 from the Southern District of

11  New York, 1995.

12          In this case, the plaintiff bears the burden at all

13  steps up until step five, and including at step two, to

14  establish the existence of a condition which meets the

15  definition at step two, and significantly, it is plaintiff's

16  burden to show that the condition has lasted or is expected

17  to last at least 12 contiguous months.  42 United States Code

18  Section 423(d)(1)(A) and 1382c(a)(3)(A).  The administrative

19  law judge rejected the shoulder condition at step two at

20  page 21 of the administrative transcript relying principally

21  upon 16F, which is the exhibit reflecting physical therapy as

22  well as the fact that she works with horses and in a

23  campground.

24          As the Commissioner -- as the plaintiff argues, it

25  is noted that Dr. Lorensen, an examining consultant, issued

1    an opinion back in August of 2016 in which, pertinently, she

2    found that plaintiff had a moderate limitation for bending,

3    lifting, and reaching.  That's at page 707 of the

4    administrative transcript.  So plaintiff has had an

5    impairment of the shoulder certainly for more than 18

6    months -- 12 months, and clearly it was exacerbated by the

7    injuries she experienced in May of 2018, late May or early

8    June, the record is unclear.  I think that the plaintiff,

9    when you consider that the step two requirement is modest, I

10   think the record supports the plaintiff has a limitation on

11   her ability to perform basic work activities based on the

12   shoulder and neck injury.  The shoulder injury has been

13   confirmed by objective testing including x-ray and MRI that I

14   referenced earlier.  The issue of course is the duration.

15   The plaintiff's injury was in May of 2018.  She testified on

16   October 24, 2018, some five months later, that it was still

17   an issue.  On October 1, 2018, it is true at page 1110 --

18   1104 to 1110 that she did not report any issue regarding her

19   neck or shoulder to Nurse Practitioner Isabelle, but she did

20   on September 27, 2018 reference shoulder pain and that she

21   was in a lot of pain over the past two weeks, that's at 1111

22   to 1114.  The -- I believe that there was error at step two.

23   The real issue is whether it was harmless or not.

24           Of course the -- pivotal to the finding of no

25   disability was the residual functional capacity determination

1   by the administrative law judge.  A claimant's RFC represents

2   a finding of the range of tasks she is capable of performing

3   notwithstanding the impairments at issue.  An RFC is

4   determined and informed by consideration of all of the

5   relevant medical and other evidence.  To properly ascertain a

6   claimant's RFC, an ALJ must assess plaintiff's exertional

7   capacities and that would include the ability to reach, and

8   of course the residual functional capacity finding must be

9   supported by substantial evidence.

10          In this case, as the plaintiff has noted, all three

11  jobs that the ALJ found plaintiff capable of performing

12  require frequent reaching.  That's for the cashier, cleaner,

13  housekeeper, and routing clerk.  Frequent reaching is defined

14  as one-third to two-thirds of the time.  I do acknowledge the

15  Commissioner's -- the case that the Commissioner has cited

16  that bears some similarity to this case, that being *Linda S.*

17  *v. Commissioner of Social Security*, it is 5:18-CV-726,

18  reported at 2019 WL 3387993, from the Northern District of

19  New York.  It was an opinion of Magistrate Judge, now Chief

20  Magistrate Judge Andrew T. Baxter, issued on July 29, 2016.

21  But I think in this case, there was error.  I think that

22  there was no limitation presented to the vocational expert

23  regarding reaching, and I think there should have been and I

24  think that is a failure on the part of the Commissioner to

25  carry his burden at step five.

1          The plaintiff also raised a treating source

2   argument.  The opinions of treating sources and other medical

3   sources are subject to, under the old regulations that do

4   apply in this case, 20 C.F.R. Sections 404.1527 and 416.927.

5   Treating sources of course are given special consideration

6   under those regulations.  The opinion of a treating physician

7   regarding the nature and severity of an impairment ordinarily

8   is entitled considerable deference, provided it is supported

9   by medically acceptable clinical and laboratory diagnostic

10  techniques and not inconsistent with other substantial

11  evidence.  *Veino v. Barnhart*, 312 F.3d 578, 588, Second

12  Circuit, 2002.  Such opinions are not controlling, however,

13  if they are contrary to other substantial evidence in the

14  record including the opinions of other medical experts.  Any

15  conflicts arising in the form of medical evidence is a matter

16  properly entrusted to the Commissioner.

17          If controlling weight is not given to a treating

18  source opinion, the administrative law judge must consider

19  several factors specified in those regulations.  In the

20  Second Circuit we refer to those sometimes as the *Burgess*

21  factors.  It is noted, however, that in most instances, the

22  *Burgess* factors are not neatly laid out in administrative law

23  judge decisions.  The Second Circuit has noted that if that

24  is -- that is not fatal if the court, reviewing the entire

25  record and the administrative law judge's decision, is firmly

26

1    convinced that the treating source rule was not violated.

2    *Estrella v. Berryhill*, 925 F.3d 90, that is from the Second

3    Circuit Court of Appeals, May 2019.

4            So in this case, Dr. Chapman's opinion, a

5    nonexamining consultant, was given great weight at page 26 of

6    the administrative transcript.  Clearly he's a specialist

7    familiar with Social Security program, and his opinions can

8    constitute substantial evidence.  Now I don't agree with the

9    plaintiff that the opinions of Dr. Chapman are stale because

10   I didn't see in the record any evidence of significant

11   deterioration in plaintiff's mental condition.  Oddly, or

12   based on the unique facts of this case, Dr. Chapman gave two

13   opinions.  One was given on October 6, 2013 and related to

14   the period prior to the date of last insured status of

15   September 30, 2014 and addressed the application for

16   Disability Insurance benefits.  The other was given on

17   October 12, 2016 and it relates to the Title XVI application.

18   They appear at Exhibits 1A and 2A in the administrative

19   transcript.

20           When considering the period prior to the date of

21   last insured status, Dr. Chapman concluded that there was

22   insufficient evidence to properly rate severity of alleged

23   psychiatric impairment or DLI in the past, that's at page 73.

24   In the later opinion related to the Title XVI application, he

25   first went through considering the B criteria, found a

1    moderate limitation in the activities of daily living, a mild

2    limitation in maintaining social functioning, moderate

3    limitation in maintaining concentration, but no episodes of

4    decompensation each of extended duration, that's at page 81.

5    In the mental RFC finding that appears at page 85, he

6    concludes plaintiff retains the capacity to perform the basic

7    mental demands of unskilled work.

8            I think that Dr. Chapman's opinion was properly

9    weighed, but not necessarily against the opinions of

10   Dr. Piotrowicz and Dr. Grassl.  Dr. Piotrowicz issued an

11   opinion on December 22, 2016, it is Exhibit 8F of the

12   administrative transcript, that is extremely limiting.  It

13   contains several marked limitations which is defined as there

14   is serious limitation in this area, individual cannot

15   generally perform satisfactorily in this area, and some

16   extreme limitations which is defined as there is major

17   limitation in this area, there is no useful ability to

18   function in this area.  Significantly, one of the extreme

19   limitations again applied by Dr. Piotrowicz is the ability to

20   perform activities within a schedule, maintain regular

21   attendance, and be punctual within customary tolerances.  It

22   is true that as a check box form, Dr. Piotrowicz' opinion is

23   entitled to less weight.  It is also true, as the

24   administrative law judge noted, that on each occasion when

25   Dr. Piotrowicz was asked to describe the medical/clinical

1    findings that support this assessment, that portion of the

2    opinion was left blank.  The administrative law judge noted

3    that the opinions of Dr. Piotrowicz were inconsistent with

4    the treatment notes from that provider, and that is certainly

5    a proper consideration, Second Circuit reaffirmed that

6    recently in *Medina v. Commissioner of Social Security*, 2020

7    WL 7418981 from December 18, 2020.  The opinion was

8    discounted also because it was based largely on self-reports,

9    and I would say I acknowledge that that's a proper

10   consideration based on *Merkley v. Commissioner of Social*

11   *Security*, 2017 WL 4512448 from the Northern District of

12   New York, October 10, 2017.  However, I will also note I

13   agree with plaintiff that self-reports are important,

14   particularly in mental health cases.  I don't think that

15   necessarily the treating source rule was violated by

16   consideration of Dr. Piotrowicz' opinions, but I note that it

17   was not wholly rejected, it was given little weight and

18   there's no explanation as to what parts were and were not

19   considered by the administrative law judge.

20           Dr. Grassl's report, she is an examining

21   consultant, or he I guess -- Corey Anne, it's a her.  The

22   administrative law judge actually found that plaintiff was

23   more limited than Dr. Grassl concluded.  I think that that

24   was properly weighed.

25           The issue here really is the ability to perform

1    under stress and the ability to maintain a regular schedule.

2    In terms of stress, I think the unskilled work in the RFC

3    properly accounts for this limitation.  The problem is

4    maintaining a schedule.  Dr. Piotrowicz, as I alluded to a

5    moment ago, found an extreme limitation in this area.

6    Dr. Grassl, who also examined the plaintiff, found a moderate

7    limitation in this area, and yet there is a finding in the

8    RFC that plaintiff was able to perform and maintain a regular

9    schedule.  The two examining, a treating source and an

10   examining source disagree.  I think that those should have

11   been given more deference than Dr. Chapman, a nonexamining

12   physician.  So -- and unfortunately, the hypothetical posed

13   to the vocational expert was based on the RFC which was

14   erroneous and did not account for plaintiff's inability to

15   perform while maintaining a schedule, and therefore I find

16   that this is also error.

17           I don't find any persuasive evidence of disability

18   and I will also say this was a very close case, so in the

19   event I were to be confronted with an Equal Access to Justice

20   Act application, I would not foreclose the ability of

21   plaintiff to argue it, but I probably would find that the

22   government's position is substantially justified in this

23   case.

24           So in conclusion, I do find that the resulting

25   determination was not supported by substantial evidence and I

1    think the matter should be remanded for a closer look at the

2    shoulder injury and its effect on ability to perform basic

3    work functions and the ability of plaintiff to perform while

4    maintaining a regular schedule.  So I will grant judgment on

5    the pleadings to the plaintiff, remand the matter for further

6    examination on these issues, and again, thank you both for

7    excellent presentations.  I hope you have a good day.  Thank

8    you.

9              MR. FLEMMING:  Thank you, your Honor.

10              MS. SONIA:  Thank you.

11                 (Proceedings Adjourned, 11:52 a.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

31

```
1

2                   CERTIFICATE OF OFFICIAL REPORTER

3

4

5          I, JODI L. HIBBARD, RPR, CRR, CSR, Federal

6     Official Realtime Court Reporter, in and for the

7     United States District Court for the Northern

8     District of New York, DO HEREBY CERTIFY that

9     pursuant to Section 753, Title 28, United States

10    Code, that the foregoing is a true and correct

11    transcript of the stenographically reported

12    proceedings held in the above-entitled matter and

13    that the transcript page format is in conformance

14    with the regulations of the Judicial Conference of

15    the United States.

16

17                         Dated this 4th day of February, 2021.

18

19

20                         /S/ JODI L. HIBBARD

21                         JODI L. HIBBARD, RPR, CRR, CSR
                           Official U.S. Court Reporter
22

23

24

25
```